Filed 4/29/15  P. v. Cruz CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN EMILIO CHAVEZ CRUZ,<br><br>    Defendant and Appellant. | A140621<br><br>(Sonoma County<br>Super. Ct. No. SCR18782) |

**I.**

**INTRODUCTION**

Appellant Juan Emilio Chavez Cruz appeals the trial court's denial of his motion to vacate his convictions because of the court's failure to advise him of the immigration consequences of his guilty plea, as required by Penal Code section 1016.5 (Section 1016.5).  He contends the trial court erred in deciding that too much time had elapsed since his original plea, and in finding that it was "implausible" he would not have entered into the same negotiated disposition had Section 1016.5 been complied with by the court that accepted his original plea.  We disagree, and affirm.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUNDS**

A one-count information was filed on May 7, 1991, by the Sonoma County District Attorney charging appellant with a single count of possession of cocaine for sale (Health & Saf. Code, § 11351).  After appellant pleaded not guilty to the charge, the prosecution filed a motion to consolidate the case with three other related criminal cases

1

which had been filed against appellant and a codefendant. The unopposed motion was granted on July 26, 1991, and an amended information was then filed charging appellant with one count of possession of cocaine for sale, and one count of sale of cocaine in violation of Health and Safety Code sections 11351 and 11352.

On September 4, 1991, appellant changed his plea from not guilty, and entered a plea of guilty to both counts. The case was referred by the court to the probation department for a presentence report, with the court indicating that if the probation department recommended a state prison sentence, the sentence would not exceed two years.[1]

A presentence report was filed by the probation department on October 17, 1991. In it the report chronicled appellant's extensive criminal history, concluded that appellant's performance on conditional releases in the past had been "poor," and noted that he admitted committing the current crimes. The circumstances of the crimes involved undercover law enforcement prearranging purchases of cocaine which implicated appellant. A search warrant of appellant's residence was executed, and evidence was obtained confirming his involvement in a drug sale. The officers executing the warrant also found additional cocaine in appellant's residence. The report concluded that the "circumstances surrounding these offenses appear to be relatively unremarkable and [appellant] has acknowledged his involvement in cocaine trafficking." Finally, the department recommended that appellant be sentenced to four years in state prison (the mid-term for the Health and Safety Code section 11352 violation), and that a concurrent term of two years for count one also be imposed but stayed.

Sentencing was held on October 23, 1991. At the hearing, defense counsel recited that the negotiated disposition included that appellant would be sentenced to state prison on count one for a term not to exceed two years, and that the sentence on count two

---

[1] There is no transcript of the 1991 plea hearing. As it is today, the sentencing triad for a violation of Health and Safety Code section 11351 was 24, 36, or 48 months in state prison. Also, the sentencing triad for a violation of Health and Safety Code section 11352 was 36, 40, and 60 months.

would be stayed or appellant would be sentenced to county jail on that violation. The prosecutor who appeared at sentencing apparently was not the same deputy who negotiated the plea. Counsel indicated that she agreed with the probation department that a term of four years in state prison on the Health and Safety Code section 11352 count was indicated rather than the two-year term discussed, because that lower term "would not even be the mitigated term under the [section] 11352." In response, appellant's counsel stated that the prosecution had "some problems with the case," in that a necessary witness on the section 11352 charge also had been charged with a drug offense.

The court then imposed the agreed upon term of two years in state prison for the violation of Health and Safety Code section 11351, and a separate term of three years in state prison for the violation of Health and Safety Code section 11352. That second term was stayed until appellant completed his two-year sentence on count one at which time the three-year concurrent sentence would be permanently stayed.

Almost 22 years later, in July 2013, appellant moved to vacate his convictions because he was not advised of the immigration consequences of his plea pursuant to Section 1016.5. He asserted that he had been denied legal permanent resident status and was subject to deportation. He submitted two declarations. The first declaration stated: "Neither the judge, the district attorney, or my own lawyer said anything to me about there being immigration consequences for me because of this conviction. . . . If I had known I could never be a Legal Permanent Resident because of this case, I never would have pleaded guilty, I would have taken my chances in a jury trial[.]" Appellant submitted a letter from the Department of Homeland Security (DHS) denying his application for lawful permanent resident status in 2004 along with an envelope from DHS showing the letter had never been delivered because appellant had moved. The second declaration stated that appellant did not know his resident status had been denied until his attorney acquired his immigration file in April 2013.

In October 2013, the court conducted a brief hearing on the Section 1016.5 motion without testimony or argument. The court stated it had reviewed the pleadings and the record was not "as perfect as we would like it to be."

3

The court then found: "The bottom line from the Court's perspective is too much time has passed with the original disposition appearing to be a very favorable one, it is hard to imagine that at the time [appellant] would have done anything different, and that it is only so many years down the road, the change in immigration, enforcement, puts [him] in jeopardy of being deported that now it becomes a primary factor in, and a determining factor in whether he would have entered into the plea agreement or not. I find it implausible. There is a period of time that's gone by that it is just too long to go and it really argues against the importance of that decision. I wasn't real clear on the timeline on the additional material [appellant] provided. He missed some of the proceedings with immigration and then they weren't able to track him down because he moved. So additional years go by. Respectfully[,] I deny your motion . . . ."

## III.

## DISCUSSION

"Before accepting a plea of guilty or no contest, a trial court is statutorily required to advise a defendant that if the defendant is not a citizen of this country, the plea could result in deportation, exclusion from the United States, or denial of naturalization. . . ." (*People v. Arriaga* (2014) 58 Cal.4th 950, 955, citing Pen. Code, § 1016.5, subd. (a).) Section 1016.5 provides if the court fails to advise a defendant at a guilty plea of the immigration consequences, "the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (Pen. Code, § 1016.5, subd. (b).)

"To prevail on a [S]ection 1016.5 motion, a defendant must establish (1) that the advisements were not given; (2) that the conviction may result in adverse immigration consequences; and (3) that the defendant would not have pled guilty or no contest had proper advisements been given. . . ." (*People v. Arriaga*, *supra*, 58 Cal.4th at pp. 957-958, citing *People v. Martinez* (2013) 57 Cal.4th 555, 558–559.)

4

There is no record that appellant was advised of the immigration consequences; we therefore presume the advisements were not properly given.  Therefore, the remaining issue is prejudice.  (*Martinez*, *supra*, 57 Cal.4th at p. 559 ["Relief will be granted, however, only if the defendant establishes prejudice."]; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 210.)  Prejudice is shown if appellant can establish it was reasonably probable he would not have pleaded guilty if properly advised.  (*Martinez*, at p. 559.)  "[T]he question is *what the defendant would have done* . . . if the court, after considering evidence offered by the parties . . . determines the defendant would have chosen not to plead guilty or nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome."  (*Ibid*., original italics.)

To establish prejudice, "the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised.  It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances."  (*People v. Martinez*, *supra*, 57 Cal.4th at p. 565.)  In *Martinez*, our Supreme Court identified several factors a trial court may consider to determine the credibility of a defendant's claim including: "the presence or absence of other plea offers, the seriousness of the charges in relation to the plea bargain, the defendant's criminal record, the defendant's priorities in plea bargaining, the defendant's aversion to immigration consequences, and whether the defendant had reason to believe that the charges would allow an immigration-neutral bargain that a court would accept."  (*Id.* at p. 568.)

Here the trial court considered the time lapse between the plea hearing and appellant's motion to vacate, the fact that the plea deal had been a favorable one for appellant, the fact that immigration policy had changed during the interim two decades, and that appellant's claim now that he would have elected to go to trial was "implausible."

We conclude that the trial court's finding were supported by the facts, including reasonable inferences from those facts, and its conclusions leading to the denial of appellant's motion fully compliant with the directives of our Supreme Court in *Martinez.*

The plea negotiated by appellant's defense counsel in 1991 was a good one from his perspective. Even assuming that appellant could not have been sentenced consecutively on both counts under Penal Code section 654 (cf. *People v. Monarrez* (1998) 66 Cal.App.4th 710), had he gone to trial, appellant faced at least double the state prison term that he was able to achieve through a plea bargain. In fact, despite the plea agreement the probation department recommended the higher sentence, which also was pointed out by the prosecutor at sentencing, who was obviously expressing "buyer's remorse" after the presentence report had been received. Factually, the case was a straightforward one, and appellant acknowledged his guilt, making a determination of guilt almost a certainty had the case proceeded to trial.

As alluded to by the trial court, immigration policy and law on deportation at the time his plea was entered made it much less likely that appellant faced deportation upon his release from prison than he faces today. As explained by the United States Supreme Court in *INS v. St. Cyr* (2001) 533 U.S. 289, 296-297 (*St. Cyr*)), the Attorney General previously had the discretion to waive deportation for a conviction of possession of cocaine for sale. The court noted: "[T]he class of aliens whose continued residence in this country has depended on their eligibility for [discretionary] relief [under the law] is extremely large, and not surprisingly, a substantial percentage of their applications for [such] relief have been granted. Consequently, in the period between 1989 and 1995 alone, [such] relief was granted to over 10,000 aliens." (*St. Cyr*, *supra*, 533 U.S. at pp. 295-296.)

The criteria for discretionary relief under prior law included "the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, the number of citizens in the family, and the character of any service in the Armed Forces." (*St. Cyr*, *supra*, 533 U.S. at p. 296, fn. 5.) "Given the frequency with which . . . relief was granted [under prior law]

6

in the years leading up to AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] and IIRIRA [Illegal Immigration Reform and Immigration Responsibility Act of 1996], preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." (*Id*. at p. 323, fns. omitted.)

Thus, at the time appellant entered his plea, deportation was far from certain. Consequently, had he been advised at the time that he *might* face deportation if he pleaded guilty but that those chances increased if he proceeded to trial, it is doubtful that he would have taken a chance at trial realizing also that he faced a much longer prison term in the likely event he was found guilty.

So too, the trial court's inference that immigration consequences were not a serious concern to appellant when he pleaded guilty in 1991 was most reasonable, and consistent with the facts. As appellant's own declaration in support of his motion to set aside his plea makes clear, he did not even seek an adjustment of his immigration status to permanent resident until 2002—a decade after his plea was entered. Even then he failed to show up for the interview, albeit because of a professed "emergency," and thereafter made no effort to contact USCIS (United States Citizenship and Immigration Services) to reschedule the interview, nor did he make any attempt to move his adjustment of status forward after 2002. In fact, he claims that he did not become aware that he was denied an adjustment of his immigration status until 2013, when his former attorney told him about the stated governmental reason for the denial of his then-stale application.

Lastly, although not specifically mentioned by the trial court, but a factor nonetheless under *Martinez*, appellant had a rather extensive criminal history, although arguably less serious than the offenses to which he pleaded guilty in 1991. He had five driving under the influence (DUI) convictions, offering only an explanation that the law in Mexico was different and he did not know that drinking and driving in this country

7

was illegal.[2]  He also had two petty theft convictions (Pen. Code, § 488), and two for driving while license privileges were suspended (Veh. Code, § 14601.2, subd. (a)).

As noted, our Supreme Court has directed courts reviewing motions to set aside convictions where Section 1016.5 has presumptively been violated to consider a number of factors in determining prejudice.  (*People v. Martinez*, *supra*, 57 Cal.4th at p. 568.)  In virtually every respect the record supports a finding of no prejudice.  Accordingly, we discern no abuse of discretion in denying appellant's motion to set aside his 1991 convictions based on a presumed failure to admonish him concerning the immigration consequences of his plea pursuant to Section 1016.5.

**IV.**

**DISPOSITION**

The judgment is affirmed.

---

[2]  Even if one were inclined to mitigate appellant's legal or moral responsibility for his first DUI because the laws in Mexico and California were different, it certainly does not diminish his culpability for the subsequent four DUI's he committed.

_____

RUVOLO, P. J.

We concur:

_____

RIVERA, J.

_____

STREETER, J.

A140621, *People v. Cruz*